**UNITED STATES DISTRCIT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TERRY NEBLOCK, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCE AUTO PARTS, INC.<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Terry Neblock ("Plaintiff"), individually and on behalf of others similarly situated (the "Class" or "Class members"), hereby brings this class action complaint against Defendant, Advance Auto Parts, Inc ("Defendant"). Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences, and upon the investigation of his attorneys as to all other matters.

## INTRODUCTION

1. This is a data breach class action on behalf of individuals whose personally identifying information ("PII") was stolen by cybercriminals as part of a major cyber-attack on Defendant's systems. It was reported that on or about May 23, 2024, there was unauthorized access to Plaintiff's and many other individuals' PII (the "Data Breach"), which was then put up for sale

by a criminal threat actor.[1] Information compromised in the breach included social security numbers or other government identification numbers of current and former job applicants and employees of Defendant.[2] Upon information and belief, information compromised in the Data Breach also included customer names, email, phone numbers, address, order and sales histories, loyalty rewards numbers and payment information.[3]

2. Defendant is an automotive aftermarket parts provider which operates 4,777 stores primarily within the United States.[4]

3. As a condition of obtaining employment with Defendant, employees are required to provide Defendant with their PII including their name, address, date of birth, driver's license number and social security number.

4. Additionally, as a condition of receiving products and services from Defendant, consumers provide Defendant with their sensitive information such as PII, including but not limited to their name, address, date of birth, driver's license number, email address, phone number, and payment information.

5. By taking possession and control of sensitive information such as PII, Defendant assumed a duty to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect individuals' PII from unauthorized disclosure.

6. Defendant also has a duty to adequately safeguard individuals' sensitive and private information under industry standards and duties imposed by statutes, including Section 5 of the

---

[1] https://www.sec.gov/Archives/edgar/data/1158449/000115844924000162/aap-20240523.htm (last visited Aug. 20, 2024).
[2] *Id.*
[3] https://www.bleepingcomputer.com/news/security/advance-auto-parts-stolen-data-for-sale-after-snowflake-attack/ (last visited Aug. 20, 2024).
[4] https://ir.advanceautoparts.com/investors/overview/ (last visited Aug. 20, 2024).

Federal Trade Commission Act ("FTC Act"), and other relevant laws and regulations.

7. Defendant breached its duties by, among other things, failing to implement and maintain reasonable security procedures and practices to protect individuals' PII from unauthorized access and disclosure.

8. On June 5, 2024, it was reported that the information stolen from the Data Breach, which amounted to 3TB of sensitive personal information, was posted online for sale by the criminal actor known as "Sp1d3r," who had improperly accessed the data on Defendant's network back in May 2024."[5] The report confirmed the validity of the data.[6]

9. Defendant has not issued a public statement about the Data Breach to the media or on its website, Defendant's only acknowledgment of the Data Breach appeared in its Form 8-K filing with the SEC, filed on June 14, 2024.[7]

10. Defendant began to notify victims of the Data Breach on or about July 24, 2024, months after the breach occurred.

11. Defendant has offered no assurance to victims that the sensitive and private information that was accessed in the Data Breach has been recovered or destroyed.

12. The exposure of a person's PII through a data breach substantially increases that person's risk of identity theft, fraud, and similar forms of criminal mischief, potentially for the rest of their lives. Mitigation of such risk requires individuals to expend a significant amount of time and money to closely monitor their credit, financial accounts and email accounts. Mitigation of the risk of misuse of their sensitive and private information may not even be possible.

[5] *Supra* n.3.
[6] *Id.*
[7] *Supra* n.1.

13. As a result of Defendant's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff and Class members' PII was accessed and disclosed. Plaintiff and Class members are now at a substantially increased risk of experiencing misuse of their PII in the coming years. This action seeks to remedy these failings and their consequences.

14. The injury to Plaintiff and Class members is compounded by the fact that Defendant failed to inform them that the Data Breach occurred until months later. Defendant's failure to timely notify the victims of the Data Breach meant that Plaintiff and Class members were unable to take premature measures to prevent or mitigate the resulting harm.

15. Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose PII was stolen in the Data Breach. Plaintiff asserts claims for negligence, negligence *per se*, breach of fiduciary duty, breach of implied contract, unjust enrichment, invasion of privacy, violations of states' consumer protection laws, and seeks declaratory relief, injunctive relief, monetary damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

**Plaintiff Terry Neblock**

16. Plaintiff Terry Neblock is an adult residing in Illinois who received notice from Defendant that his PII, including his banking information and social security number was exposed in the Data Breach. Plaintiff Neblock was an employee of Defendant when the Data Breach occurred.

**Defendant Advance Auto Parts, Inc.**

17. Defendant Advance Auto Parts, Inc is a Delaware corporation with a principal place

of business located at 4200 Six Forks Road, Raleigh, North Carolina 27609. Defendant's registered agent is located at 251 Little Falls Drive, Wilmington, DE 19808.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million dollars, exclusive of interest and costs, and is a class action in which some members of the class are citizens of states different than Defendant. See 28 U.S.C. § 1332(d)(2)(A). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19. This Court has personal jurisdiction over Defendant because Defendant is incorporated in this district. Defendant's registered agent is located at 251 Little Falls Drive, Wilmington, DE 19808.

20. Venue is proper under 18 U.S.C. § 1391 because Defendant is incorporated in this District and thus resides here for venue purposes.

## FACTUAL ALLEGATIONS

***Defendant Collects and Stores PII***

21. Defendant is an automotive aftermarket parts provider which operates 4,777 stores primarily within the United States.[8]

22. As a condition of obtaining employment with Defendant, employees are required to provide Defendant with their PII including their name, address, date of birth, driver's license number and social security number.

23. Additionally, as a condition of receiving products and services from Defendant,

[8] *Supra* n.4.

consumers provide Defendant with their sensitive information such as PII, including but not limited to their name, address, date of birth, driver's license number, email address, phone number, and payment information.

24. Upon information and belief, Defendant stores PII off-site in the cloud using the third-party vendor, Snowflake.

25. Due to the highly sensitive nature of the information Defendant collects and maintains, Defendant is obligated to provide confidentiality and adequate security for individuals' information.

26. Defendant's applicable privacy policies demonstrate that it is aware of its legal obligations to keep PII confidential and secure, and indeed promises to do just that.

27. Despite Defendant's representations about the privacy of its employees' and customers' information, it did not employ reasonable security measures to protect their PII from unauthorized disclosure as demonstrated throughout this Complaint.

28. On information and belief, the type of information that Defendant maintains includes, *inter alia*: full names, addresses, dates of birth, Social Security number ("SSN"), driver's license numbers, payment information and any other information necessary to carry out its business.

29. Upon information and belief, Plaintiff and Class members provided their PII, including their social security numbers to Defendant.

30. Plaintiff and Class members relied on Defendant to keep their sensitive PII confidential and secured, to use such information for business purposes only, and to make only authorized disclosures of this information.

31. Upon information and belief, on or about July 24, 2024, Defendant began to notify

the affected individuals of the Data Breach that their private information, which was in Defendant's possession, was stolen in the Data Breach. Plaintiff received a breach notification letter from Defendant on or about July 24, 2024.

32. Plaintiff and Class members are entitled to protections to keep their sensitive PII, including their social security numbers, confidential and secured, to use such information for business purposes only, and to make only authorized disclosures of this information.

***Defendant Knew that Criminals Target Valuable PII and Failed to Take Action to Prevent Theft***

33. At all relevant times, Defendant knew it was storing sensitive PII and that, as a result, Defendant's systems would be attractive for cybercriminals.

34. Defendant also knew that a breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII was compromised.

35. The risks are not theoretical. The prevalence of data breaches has increased dramatically over the years: "The number of reported data breaches in the U.S. rose to a record 3,205 in 2023, up 78% from 2022 and 72% from the previous high-water mark in 2021, according to the nonprofit Identity Theft Resource Center."[9]

36. In recent years, numerous high-profile breaches have occurred including breaches involving MoveIt, First American Financial Corp., JP Morgan Chase & Co., and Equifax.

37. In tandem with the increase in data breaches, the rate of identity theft has increased. Since 2019, identity theft reports have increased $68.3%. In the second quarter of 2023, roughly

[9] Stuart Madnick, *If Companies Are So Focused on Cybersecurity, Why Are Data Breaches Still Rising?*, THE WALL STREET JOURNAL (Mar. 15, 2024), https://www.wsj.com/tech/cybersecurity/why-are-cybersecurity-data-breaches-still-rising-2f08866c (last visited Aug. 20, 2024).

277,620 ID theft reports were submitted to the Federal Tarde Commission, which was a substantial increase from the 164,982 reported in the same quarter in 2019.[10]

38. Every state has experienced an increase in identity theft over 11% per 100,000 residents since 2019.[11]

39. PII has considerable value to hackers. Hackers sell stolen data on the black market through the "proliferation of open and anonymous cybercrime forums on the Dark Web that server as a bustling marketplace for such commerce."[12]

40. The breadth of data that can be bought and sold leaves Defendant's consumers especially vulnerable to identity theft, tax fraud, credit and bank fraud.

41. Consumers also place a high value on the privacy of their data. Studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[13]

42. Recently, more consumers are exercising their Data Subject Access Rights and leaving providers over their data practices and policies.[14]

---

[10] Julie Ryan Evans, *93 of 100 Largest US Metros and All States Hae Seen Increase in ID Theft Reports Since 2019*, LENDINGTREE (Nov. 6, 2023), https://www.lendingtree.com/insurance/id-theft-study/#:~:text=Identity%20theft%20reports%20have%20increased,the%20same%20quarter%20in%202019 (last visited Aug. 20, 2024).

[11] *Id.*

[12] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last visited Aug. 20, 2024).

[13] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), available for download at: https://www.jstor.org/stable/23015560?seq=1.

[14] CISCO, *Cisco 2023 Consumer Privacy Survey* (April 2023), available at https://www.cisco.com/c/en/us/about/trust-center/consumer-privacy-survey.html?CCID=cc000742

43. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

44. Defendant certainly knew and understood that unprotected or exposed PII in its custody is highly valuable and sought after by nefarious criminals seeking to illegally monetize that PII through unauthorized access.

45. Armed with this knowledge, Defendant breached its duties by failing to implement and maintain reasonable security measures to protect Plaintiff and Class members' PII from being stolen.

***The Data Breach***

46. On or around June 14, 2024, Defendant filed a Form 8-K with the SEC disclosing the Data Breach:

> On May 23, 2024, Advance Auto Parts, Inc. (the "Company") identified unauthorized activity within a third-party cloud database environment containing Company data and launched an investigation with industry-leading experts. On June 4, 2024, a criminal threat actor offered what it alleged to be Company data for sale. The Company has notified law enforcement.[15]

47. Defendant indicated that Data Breach impacted "current and former job applicants and employees of the Company."[16]

48. Further, Defendant stated that a "criminal threat actor offered what it alleged to be Company data for sale" on June 4, 2024.[17]

49. Despite Defendant's claim that the Data Breach only impacted "current and former

[15] *Supra* n.1.
[16] *Id.*
[17] *Id.*

job applicants and employees," there is significant reporting indicating that the Data Breach encompassed up to hundreds of millions of consumer profiles, including information on customer orders, sales history, and substantial consumer information.[18]

50. Upon information and belief, the Data Breach encompassed information beyond what was initially disclosed by Defendant, and the information compromised includes: names, addresses, phone numbers, email addresses, order and sale histories, loyalty rewards numbers, social security numbers, driver's license numbers, banking information, and payment information.

51. Indeed, a post from the criminal threat actor "Sp1d3r," revealed the massive archive of data stolen from Defendant[19]:




52. The validity of the data was confirmed in a report.[20]

---

[18] *Supra* n.3.
[19] *Id.*
[20] *Id.*

53. Unfortunately for Plaintiff and Class members, Defendant failed to promptly inform them that the Data Breach occurred. Upon information and belief, Defendant did not begin to send notice letters to affected individuals until on or about July 24, 2024. Defendant's failure to timely notify the victims of the Data Breach meant that Plaintiff and Class members were unable to take premature measures to prevent or mitigate the resulting harm

54. Upon information and belief, the cyberattack was targeted at Defendant, due to its status as an entity that collects, creates, and maintains PII on its computer network and/or systems.

55. Plaintiff and Class members' PII was compromised and acquired in the Data Breach.

56. Due to this targeted cyberattack, data thieves were able to gain access to and obtain data from the Defendant that included the PII of Plaintiff and Class members.

57. As evidenced by the Data Breach's occurrence, the PII contained on Defendant's systems was not encrypted. Had it been, the data thieves would have stolen only unintelligible data.

58. Plaintiff and Class members now live with their PII exposed in cyberspace and available to people willing to purchase and use the information for any number of improper purposes and crimes.

59. Plaintiff and Class members now face constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages, in addition to any fraudulent use of their PII.

***Plaintiff Terry Neblock's Experience in the Data Breach***

60. Plaintiff Terry Neblock is a resident of Illinois and a current employee of Defendant.

61. On or about July 24, 2024, Plaintiff Neblock received notice from Defendant that his banking information and social security number was exposed in the Data Breach.

62. As a result of the Data Breach, Plaintiff has had to spend time and resources monitoring his credit report and financial accounts for fraudulent activity. Plaintiff placed a freeze on his accounts when he received notice that he was a victim in the Data Breach.

63. Plaintiff is careful about sharing his private information. Plaintiff stores any documents containing private information in a safe and secure location. He never knowingly transmitted unencrypted private information over the internet or any other unsecured medium. Plaintiff would not have entrusted his private information with Defendant had he known of Defendant's failure to implement and maintain data security measures.

64. Because of the Data Breach, Plaintiff is now at a substantial risk of identity theft and will spend future time and resources to monitor his accounts and mitigate the risk of identity theft and/or other types of fraud.

***Defendant Failed to Comply with the FTCA and FTC Guidelines***

65. The Federal Trade Commission Act ("FTCA") prohibits Defendant from engaging in "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45.

66. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which reflect the importance of implementing reasonable data security practices.

67. The FTC's publication, Protecting Personal Information, established cyber-security guidelines for businesses. The guidelines provide that businesses should take action to protect the personal information that they collect; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their networks'

vulnerabilities; and implement policies to correct any security problems.[21]

68. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[22]

69. The FTC further recommends that businesses not maintain private information longer than is needed for authorization of a transaction; limit access to sensitive information; require complex passwords be used on networks; use industry-tested methods for security monitor for suspicious activity on the networks; and verify that third-party service providers have implemented reasonable security measures.

70. The FTC has the authority to bring enforcement actions against businesses for failing to protect PII adequately and reasonably under Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

71. The orders that result from enforcement actions further clarify the measures businesses must take to meet their data security obligations.

72. Defendant failed to properly implement basic data security practices.

73. Defendant was at all relevant times fully aware of its obligations to protect individuals' PII, and of the significant consequences that would result from its failure to do so.

74. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' PII constitutes an unfair act or practice prohibited by

[21] Protecting Personal Information: A Guide for Business, Federal Trade Commission (2016). Available at https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

[22] *Id.*

Section 5 of the FTC Act, 15 U.S.C. § 45.

75. Consequently, cybercriminals circumvented Defendant's lax security measures, resulting in the Data Breach and causing injury to Plaintiff and Class members.

***Defendant Failed to Comply with Industry Standards***

76. Entities like Defendant are particularly vulnerable to cyberattacks because of the sensitive nature of the information that they collect and maintain.

77. Due to this vulnerability, there are industry best practices that should be implemented by entities like Defendant.

78. These practices include but are not limited to: Educating and training employees about the risks of cyberattacks, strong passwords, multi-layer security such as firewalls, anti-virus and malware software, encryption, multi-factor authentication, backup data, limitation of employees with access to sensitive data, setting up network firewalls, switches and routers, monitoring and limiting the network ports, and monitoring and limited access to physical security systems.

79. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

80. Additionally, multi- factor authentication (MFA) has become the industry standard for protecting systems from unauthorized access due to its superior security capabilities compared to traditional single-factor authentication methods.

81. MFA is a security method that requires users to provide two or more verification factors to gain access to a resource such as a database, online account, or other digital platform. It is designed to enhance security beyond the traditional username and password combination by adding extra layers of protection against unauthorized access.

82. By requiring multiple forms of verification, MFA significantly reduces the risk of unauthorized access, even if one factor (like a password) is compromised. This makes it a crucial component of modern cybersecurity strategies for both organizations and individuals, and the baseline industry standard for data security. In contrast, the reliance on a simple username and password combination for authentication falls significantly below the current standard of care in cybersecurity due to several critical vulnerabilities and the evolving threat landscape.

83. Industry standards and best practices now require the implementation of multi-factor authentication (MFA) as a crucial component of a robust cybersecurity strategy that has been widely adopted across various industries, including finance, healthcare, and technology. Leading security organizations, such as the National Institute of Standards and Technology (NIST)[23] and the Cybersecurity and Infrastructure Security Agency (CISA),[24] strongly recommend the use of MFA as a critical component of a robust cybersecurity strategy.

84. The widespread adoption of MFA as an industry standard, coupled with its proven effectiveness in enhancing security, establishes a clear benchmark for reasonable care in protecting systems from unauthorized access. The continued reliance on simple username and password

[23] *See* https://csrc.nist.gov/csrc/media/Presentations/2022/multi-factor-authentication-and-sp-800-63-digital/images-media/Federal_Cybersecurity_and_Privacy_Forum_15Feb2022_NIST_Update_Multi-Factor_Authentication_and_SP800-63_Digital_Identity_%20Guidelines.pdf (last accessed 8/20/24)

[24] *See* https://www.cisa.gov/MFA (last accessed 8/20/24)

authentication falls short of this standard and exposes organizations and their users to significant and unnecessary risks in today's complex cybersecurity landscape.

85. Accordingly, the standard of care in the industry required Defendant to insist upon the implementation of MFA to properly secure and protect Consumer Data; not store cardholder data beyond the time necessary to authorize a transaction; maintain up-to-date antivirus software and a proper firewall; protect systems against malware; regularly test security systems; establish a process to identify and timely fix security vulnerabilities; and encrypt Customer Data that needs to be stored for any period of time.

86. Despite its awareness of its data security obligations, Defendant's treatment of PII entrusted to it by its employees and customers fell far short of satisfying its legal duties and obligations. Defendant failed to ensure that access to its data systems was reasonably safeguarded, failed to acknowledge and act upon industry warnings and failed to use proper security systems to detect and deter the type of attack that occurred and is at issue here.

87. The Defendant's failure to implement the industry standards described herein resulted in the Data Breach and caused injury to Plaintiff and Class members.

***Common Damages Sustained by Plaintiff and Class Members***

88. For the reasons mentioned above, Plaintiff and all other Class members have suffered injury and damages directly attributable to Defendant's failure to implement and maintain adequate security measures, including, but not limited to: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII; (iv) breach of the confidentiality of their PII; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate

and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

## CLASS ALLEGATIONS

89. Plaintiff incorporates by reference all allegations in the preceding paragraphs as though fully set forth herein.

90. Plaintiff brings this class action individually and on behalf of all persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

91. Plaintiff seeks certification of a Class as defined below and further reserves the right to amend the definition or propose additional subclasses in subsequent pleadings:

> **Nationwide Class**
>
> All individuals in the United States whose PII was compromised in the Data Breach (the "Class").
>
> **State Subclass**
>
> All individuals residing in Illinois whose PII was compromised in the Data Breach (the "Illinois Class").

92. Excluded from the Class is Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

93. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

94. Numerosity. The members in the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. It was reported that approximately 340 million customer records and 358,000 employee records were exposed in the Data Breach. The contact information of those individuals is available from Defendant's business records.

95. Commonality. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

- Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff and Class members' PII from unauthorized access and disclosure;
- Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff and Class members' PII;
- Whether Defendant breached its duties to protect Plaintiff and Class members' PII;
- When Defendant learned of the Data Breach;
- Whether Defendant knew or should have known that its data security systems and monitoring procedures were deficient;
- Whether hackers obtained Plaintiff and Class members' data in the Data Breach;
- Whether Defendant owed a fiduciary duty to Plaintiff and Class members to protect and safeguard their PII;
- Whether Defendant breached its fiduciary duty owed to Plaintiff and Class members;
- Whether an implied contract existed between Plaintiff, Class members and Defendant providing that Defendant would implement and maintain reasonable security measures to protect and secure Plaintiff and Class members' PII from unauthorized access and disclosure;
- Whether Defendant was unjustly enriched;
- Whether Defendant invaded Plaintiff and Class members' privacy by causing the Data Breach;
- Whether Defendant violated state consumer protection laws;
- Whether Plaintiff and Class members are entitled to injunctive relief and identity theft protection to redress the imminent harm they face due to the Data Breach; and
- Whether Plaintiff and Class members are entitled to actual, statutory, or other forms

of damages flowing from the wrongs alleged herein and the measure of such damages and relief.

96. Typicality. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

97. Adequacy of Representation. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that he has no interests adverse to, or in conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

98. Superiority. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress from Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

99. All members of the proposed Class are readily ascertainable. Defendant has access to the names, addresses, and/or email addresses of Class members affected by the Data Breach.

100. Finally, class certification is appropriate under Fed. R. Civ. P. 23(b). Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

## CAUSES OF ACTION

## COUNT I

## NEGLIGENCE

**(Plaintiff, individually and on behalf of the Nationwide Class, or alternatively, the Illinois Class)**

101. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

102. Defendant requires that employees and consumers, including Plaintiff and Class members, submit private information such as PII in the course of carrying out its business.

103. Defendant collected, acquired, and stored Plaintiff and Class members' private information on its servers.

104. Plaintiff and Class members entrusted Defendant with their private information and had the understanding that Defendant would safeguard their information.

105. Defendant had knowledge of the sensitivity of Plaintiff and Class members' private information, and the consequences that would result from the unauthorized disclosure of such information. Defendant knew that entities such as them were the target of cyber-attacks in the past, and that Plaintiff and Class members were the foreseeable and probable victims of any inadequate

data security procedures.

106. It was therefore reasonably foreseeable that the failure to implement adequate data security procedures would result in injuries to the Plaintiff and Class members.

107. Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their private information in its possession, custody, or control from the unauthorized disclosure of such information.

108. Defendant's duty to exercise reasonable care arises from several sources, including but not limited to common law, the FTCA, and industry standards.

109. Defendant breached its duty by failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff and Class members' PII.

110. It has been reported that the PII of Plaintiff and Class members was disclosed to unauthorized third persons as a result of the Data Breach.

111. Defendant's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members caused their PII to be compromised in the Data Breach.

112. Plaintiff and Class members were in no position to protect their PII themselves.

113. But for Defendant's breach of the duties described herein, Plaintiff and Class members' PII would not have been compromised.

114. There is a causal relationship between Defendant's failure to implement, control, direct, oversee, manage, monitor, and audit adequate data security procedures to protect the PII of individuals and the harm suffered by Plaintiff and Class members.

115. As a direct and proximate result of Defendant's conduct described above, it directly and proximately caused the Data Breach, and Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII; (iv) breach of the confidentiality of their PII; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

116. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

117. Plaintiff and Class members are entitled to damages incurred as a result of the Data Breach.

118. Defendant's negligent conduct is ongoing, in that it still holds Plaintiff and Class members' PII in an unsafe and insecure manner.

119. Plaintiff and Class members are also entitled to injunctive relief in the form of requiring Defendant to strengthen its data security procedures and to provide credit monitoring to Class members.

**COUNT II**
**NEGLIGENCE PER SE**
**(Plaintiff, individually and on behalf of the Nationwide Class, or alternatively, the Illinois Class)**

120. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

121. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to maintain fair and adequate computer systems and data security practices to safeguard Plaintiff and Class members' PII.

122. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and Class members' PII.

123. Defendant's duty to use reasonable care in protecting confidential and sensitive data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

124. Defendant violated its duties under Section 5 of the FTC Act by failing to use reasonable or adequate data security practices and measures to protect Plaintiff and Class members' PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII that Defendant collected and stored and the foreseeable consequences of a cybersecurity data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

125. The harm that has occurred is the type of harm the FTC Act is intended to guard against.

126. Indeed, the FTC has pursued numerous enforcement actions against businesses that,

because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

127. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and Class Members, Plaintiff and the Class Members would not have been injured.

128. The injuries and harm suffered by Plaintiff and Class members were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that they were failing to meet its duties and that its breach would cause Plaintiff and Class members to suffer the foreseeable harm associated with the exposure of their PII.

129. Defendant's various violations and its failure to comply with the applicable laws and regulations referenced above constitute negligence *per se*.

130. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII; (iv) breach of the confidentiality of their PII; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

131. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer other forms of injury, including but not limited to, anxiety, emotional distress, invasion of privacy, and other economic and non-economic losses.

132. Plaintiff and Class members are entitled to damages incurred as a result of the Data Breach.

133. Defendant's negligent conduct is ongoing, in that it still holds Plaintiff and Class members' PII in an unsafe and insecure manner.

134. Plaintiff and Class members are also entitled to injunctive relief in the form of requiring Defendant to strengthen its data security procedures and to provide credit monitoring to Class members.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**
**(Plaintiff, individually and on behalf of the Nationwide Class, or alternatively, the Illinois Class)**

135. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

136. Plaintiff and Class members gave Defendant their PII in confidence, believing that Defendant would protect that information. Plaintiff and Class members would not have provided Defendant with this information had they known it would not be adequately protected. Defendant's acceptance and storage of Plaintiff and Class members' PII created a fiduciary relationship between Defendant, Plaintiff and Class members. In light of this relationship, Defendant must act primarily for the benefit of its consumers, which includes safeguarding and protecting Plaintiff and Class members' PII.

137. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiff and Class members' PII, failing to comply with Section 5 of the FTCA and industry standards, and otherwise failing to safeguard Plaintiff

and Class members' PII that it collected.

138. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII; (iv) breach of the confidentiality of their PII; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(Plaintiff, individually and on behalf of the Nationwide Class, or alternatively, the Illinois Class)**

139. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

140. In connection with receiving services from Defendant, Plaintiff and all other Class members entered into implied contracts with Defendant or were intended third-party beneficiaries of contracts between Defendant and others.

141. Pursuant to these implied contracts, money and/or work was paid to Defendant, whether directly from Plaintiff and Class members or indirectly, and Defendant stored the PII of Plaintiff and Class members on its network. In exchange, Defendant impliedly agreed to, among other things, take reasonable measures to protect the security and confidentiality of Plaintiff and Class members' PII; and protect Plaintiff and Class members' PII in compliance with federal and

state laws and regulations and industry standards.

142. The protection of PII was a material term of the implied contracts that were either between Plaintiff and Class members, on the one hand, and Defendant, on the other hand or were between third parties and Defendant to which Plaintiff and Class members were intended third party beneficiaries.

143. Plaintiff and Class members or the third parties fulfilled their obligations under the contracts.

144. Defendant breached its obligations by failing to implement and maintain reasonable data security measures to protect and secure the PII and in failing to implement and maintain security protocols and procedures to protect Plaintiff and Class members' PII in a manner that complies with applicable laws, regulations, and industry standards.

145. Defendant's breach of its obligations of its implied contracts directly resulted in the Data Breach and the injuries that Plaintiff and all other Class members have suffered from the Data Breach.

146. Plaintiff and all other Class members were damaged by Defendant's breach of implied contracts because: (i) they paid for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) they suffered actual identity theft; (iv) their PII was improperly disclosed to unauthorized individuals; (v) the confidentiality of their PII has been breached; (vi) they were deprived of the value of their PII, for which there is a well-established national and international market; and/or (vii) they lost time and money to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

**COUNT V**
**UNJUST ENRICHMENT**
**(Plaintiff, individually and on behalf of the Nationwide Class, or alternatively, the Illinois Class)**

147. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

148. This count is pleaded in the alternative to Plaintiff's breach of implied contract claim (Count IV)

149. Plaintiff and Class members have an interest, both equitable and legal, in the private information about them that was collected, secured, and maintained by Defendant and that was ultimately compromised in the Data Breach.

150. A financial benefit was conferred upon Defendant when Plaintiff and Class members provided Defendant with their PII, including their social security numbers.

151. The relationship between Defendant, Plaintiff and Class members is not attenuated, as Plaintiff and Class members had a reasonable expectation that the security of their information would be maintained when they provided their information to Defendant, or when Defendant otherwise took control of their information. Plaintiff and Class members were induced to provide their information in reliance on the fact that Defendant's data security measures were adequate.

152. Defendant had direct knowledge of the monetary benefits conferred upon it (including the use of valuable PII for business purposes and financial gain).

153. Defendant accepted the benefits conferred upon it by Plaintiff and Class members by acquiring and/or collecting their private information as a necessary part of obtaining Defendant's services and/or employment. Defendant appreciated and benefitted from the receipt of Plaintiff and Class members' private information in that they used the private information and

profited from the transactions in furtherance of its business.

154. Defendant also understood and appreciated that the PII pertaining to Plaintiff and Class members was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that PII.

155. Defendant acquired Plaintiff and Class members' private information through inequitable means in that it failed to disclose the inadequate data security procedures previously alleged herein.

156. As a result of Defendant's conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class members paid for and expected, and those payments without reasonable data privacy and security practices and procedures that they received.

157. Defendant should not be permitted to retain the payments which include information belonging to Plaintiff and Class members because Defendant failed to adequately implement the data privacy and security procedures for itself that Plaintiff and Class members paid for and that were otherwise mandated by federal and state law and industry standards.

158. Defendant unjustly enriched itself by using payments containing private information provided by Plaintiff and Class members to further its business.

159. Notably, Defendant chose not to use any payments received to enhance their data security procedures.

160. Under principles of equity and good conscience, Defendant should not be permitted to retain the payments wrongfully obtained from Plaintiff and Class members, and be compelled to provide for the benefit of Plaintiff and Class members, all unlawful proceeds received by it as a

result of the conduct and Data Breach alleged herein.

**COUNT VI**
**INVASION OF PRIVACY**
**(Plaintiff, individually and on behalf of the Nationwide Class, or alternatively, the Illinois Class)**

161. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

162. As a condition of receiving services from Defendant, Plaintiff and Class members were required to provide Defendant with their PII, including their social security numbers.

163. Defendant was under a legal duty to keep Plaintiff and Class members' PII safe from unauthorized disclosure.

164. Defendant invaded Plaintiff and Class members' privacy by failing to adequately safeguard their PII, thereby causing the Data Breach which resulted in the unauthorized access to Plaintiff and Class members' sensitive PII.

165. The invasion of privacy was public in nature, as the information was stolen by cybercriminals who thereafter converted Plaintiff and Class members' PII into a downloadable format and posted it on the web for others to purchase and use.

166. The intrusion was offensive to Plaintiff and Class members, and to a reasonable person in that sensitive PII was accessed by unauthorized parties without Plaintiff and Class members' consent, and made public on the internet, increasing the risk of identity theft and other fraud.

167. The intrusion was into a place or thing which was private and is entitled to be private since Plaintiff and Class members provided their PII to Defendant privately with the expectation that the PII would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

168. Due to the private nature of PII, it is not information that is of legitimate concern of the public.

169. Defendant intentionally caused Plaintiff and Class members' PII to be accessed by and unauthorized third party by willfully failing to enact adequate safeguards to protect their PII, despite knowing the risks faced by Plaintiff and Class members in the event of an unauthorized disclosure.

170. As a direct and proximate result of Defendant's actions, Plaintiff and Class members' PII was accessed by an unauthorized third party and shared on the internet.

171. Defendant's wrongful conduct will continue to cause Plaintiff and Class members great harm since the PII maintained by Defendant was stolen and published on the dark web. Plaintiff and Class members have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff and Class members, and Defendant may freely treat Plaintiff and Class members' PII with inadequate safeguards.

## COUNT VII
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, et eq. ("ICFA")
## (On Behalf of Plaintiff Neblock and the Illinois Class)

172. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

173. Section 2 of ICFA prohibits unfair or deceptive acts or practices and states, in relevant part, as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

174. Defendant violated Section 2 of ICFA by engaging in unfair acts in the course of conduct involving trade or commerce in the following ways:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Class members' PII, which was a direct and proximate cause of the ransomware attack;

b. Failing to identify foreseeable security and privacy risks, and remediate identified security and privacy risks, which was a direct and proximate cause of the ransomware attack;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the ransomware attack;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Class members' PII, including by implementing and maintaining reasonable security measures;

e. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and Class members' PII; and

f. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the ransomware attack.

175. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Private Information.

176. Defendant acted intentionally, knowingly, and maliciously to violate ICFA, and

recklessly disregarded Plaintiff and Class members' rights. Numerous and an ever-increasing number of ransomware attacks put Defendant on notice that its security and privacy protections were inadequate.

177. Had Defendant disclosed to Plaintiff and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law.

178. Plaintiffs and Class members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

179. Defendant's unlawful trade practices were gross, oppressive, and aggravated, and Defendant breached the trust of Plaintiff and Class members.

180. As a direct and proximate result of Defendant's unlawful acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including *inter alia*: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII; (iv) breach of the confidentiality of their PII; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

181. Plaintiff and Class members seek all monetary and non-monetary relief allowed by law resulting from the direct and natural consequences of Defendant's unlawful conduct; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT VIII
## VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 Ill. Comp. Stat. §§ 510/2, et seq.

**(On Behalf of Plaintiff Neblock and the Illinois Class)**

182. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

183. Defendant is a "person" as defined by 815 Ill. Comp. Stat. §§ 510/1(5).

184. Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 Ill. Comp. Stat. §§ 510/2(a), including, but not limited to:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Class members' PII, which was a direct and proximate cause of the ransomware attack;

b. Failing to identify foreseeable security and privacy risks, and remediate identified security and privacy risks, which was a direct and proximate cause of the ransomware attack;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the ransomware attack;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Class members' PII, including by implementing and maintaining reasonable security measures;

e. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and Class members' PII; and

f. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the ransomware attack.

185. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PII.

186. Defendant acted intentionally, knowingly, and maliciously to violate ICFA, and recklessly disregarded Plaintiff and Class members' rights. Numerous and an ever-increasing number of ransomware attacks put Defendant on notice that its security and privacy protections were inadequate.

187. Had Defendant disclosed to Plaintiff and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law.

188. Plaintiff and Class members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

189. Defendant's unlawful trade practices were gross, oppressive, and aggravated, and Defendant breached the trust of Plaintiff and Class members.

190. As a direct and proximate result of Defendant's unlawful acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages including *inter alia*: (i) a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) actual identity theft; (iii) improper disclosure of their PII; (iv) breach of the confidentiality of their PII; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

191. Plaintiff and Class members seek all monetary and non-monetary relief allowed by law resulting from the direct and natural consequences of Defendant's unlawful conduct;

injunctive relief; and reasonable attorneys' fees and costs.

**COUNT IX**
**DECLARATORY JUDGMENT/INJUNCTIVE RELIEF**
**(Plaintiff, individually and on behalf of the Nationwide Class, or alternatively, the Illinois Class)**

192. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

193. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to declare rights, status, and other legal relations, and such declarations shall have the force and effect of a final judgment or decree. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint

194. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff and Class members' PII and whether Defendant is currently maintaining adequate data security measures to protect Plaintiff and Class members from further data breaches that compromise their PII. Plaintiff alleges that Defendant's data security measures remain inadequate, contrary to Defendant's assertion that the security of its network is no longer at risk. Plaintiff continues to suffer injuries as a result of the compromise of his Private Information and he and Class members remain at imminent risk that further compromises of their Private Information will occur in the future.

195. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure Private Information and to timely notify donors or any individuals impacted of a data breach under the common law, Section 5 of the FTC Act, state statutes, and the common law; and

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure donors' Private Information.

196. This Court should also issue corresponding prospective injunctive relief requiring Defendant to, at minimum 1) disclose, expeditiously, the full nature of the Data Breach and the types of Private Information accessed, obtained, or exposed by the hackers; 2) implement improved data security practices to reasonably guard against future breaches of Plaintiff's and Class members' Private Information possessed by Defendant; 3) provide, at its own expense, all impacted victims with lifetime identity theft protection services such as credit monitoring and identity theft insurance; 4) cease engaging in the wrongful and unlawful acts alleged herein; delete and purge the Private Information of Plaintiff's and Class members' unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff's and Class members'; 5) engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis; 6) conduct regular database scanning and securing checks; monitor ingress and egress of all network traffic; 7) establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiff's and Class members'; 8) implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information; 9) implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated; and 10) educate the

public about the threats that it faces because of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

197. If an injunction is not issued, Plaintiff will suffer irreparable injuries, and lack adequate legal remedies, in the event of another data breach of Defendant's systems. The risk of another such breach is real, immediate, and substantial. If another breach occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and he will be forced to bring multiple lawsuits to rectify the same conduct.

198. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

199. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach of Defendant's systems, thus eliminating the additional injuries that would result to Plaintiff and Class members whose confidential information would be further compromised

**PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate

injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: August 20, 2024.

Respectfully submitted,

*By: /s/ Scott M. Tucker*
Scott M. Tucker (Del. Bar No. 4925)
Robert J. Kriner, Jr. (Del. Bar No. 2546)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
2711 Centerville Rd., Suite 201
Wilmington, DE 19808
Tel.: 302-656-2500
smt@chimicles.com
rjk@chimicles.com

Steven A. Schwartz *(pro hac vice forthcoming)*
Beena M. McDonald *(pro hac vice forthcoming)*
Alex M. Kashurba *(pro hac vice forthcoming)*
Marissa N. Pembroke*(pro hac vice forthcoming)*
**CHIMICLES SCHWARTZ KRINER**

**& DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
steveschwartz@chimicles.com
bmm@chimicles.com
amk@chimicles.com
mnp@chimicles.com

James J. Rosemergy *(pro hac vice forthcoming)*
**CAREY, DANIS & LOWE**
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Tele: 314-725-7700
Direct: 314-678-1064
Fax: 314-721-0905
jrosemergy@careydanis.com

***Attorneys For Plaintiff and The Proposed Class***